ORDERED.

**Dated:  July 02, 2021**

Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                          Case No. 19-04182-MGW
                                                                Chapter 7
Armin Ebrahimpour

     Debtor.
_____/

Benz Research and Development                    Adv. No. 8:19-ap-00309-MGW
Corporation,

     Plaintiff,

v.

Armin Ebrahimpour,

     Defendant.
_____/

### MEMORANDUM OPINION AND ON DISCHARGEABILITY OF TRADE SECRETS CLAIM AS A MATTER OF LAW

     The Debtor stole trade secrets from his former employer, Benz Research and

Development Corporation. When he was later sued in state court for willfully and

maliciously misappropriating trade secrets, the Debtor obstructed that litigation by

(among other things) fabricating, concealing, and destroying evidence, as well as giving false testimony. So the state court struck his pleadings, defaulted him, and sanctioned him with attorney's fees. Ultimately, a $6 million judgment was entered against the Debtor.

Relying on the facts established by that judgment (and other state court orders), Benz Research now asks the Court to rule, on summary judgment, that the $6 million judgment is nondischargeable as a matter of law under Bankruptcy Code § 523(a)(4) and § 523(a)(6). Although the Debtor is collaterally estopped from relitigating the fact that he misappropriated Benz Research's trade secrets and later engaged in litigation misconduct, Benz Research is not entitled to judgment as a matter of law because the state court never determined—in the final judgment or otherwise—that the Debtor (1) took Benz Research's trade secrets with the intent to convert them or deprive Benz Research of them; or (2) intended to injure Benz Research by misappropriating its trade secrets or engaging in litigation misconduct.

## I.    Undisputed Facts

In June 2011, Benz Research and Development Corporation sued the Debtor in state court for (among other things) misappropriation of trade secrets.[1] In its complaint, Benz Research alleged that when the Debtor quit working for the company, he willfully and maliciously took 6,000 electronic files containing

---

[1] *Order on Pl.'s Mot. to Enforce Ct. Orders & for Contempt Sanctions*, Adv. Doc. No. 12-2 at 2. When possible, the pinpoint citation is to the page number of the underlying state court document.

drawings of custom components for Benz Research's manufacturing equipment and then used those drawings to replicate components for his new employer, Ennovy Spain, allowing Ennovy Spain to drastically improve its manufacturing processes.[2]

The state court temporarily enjoined the Debtor from disseminating Benz Research's trade secrets.[3] It also entered a preservation order requiring that certain evidence be turned over to a receiver.[4]

Four years into the litigation, Benz Research asked the state court to sanction the Debtor for violating the state court's injunction and preservation order; withholding documents during discovery; fabricating and concealing evidence; and testifying falsely under oath in affidavits, court proceedings, depositions, and interrogatory answers.[5] After a five-day evidentiary hearing, the state court found the Debtor engaged in the following misconduct:

- when the Debtor left Benz Research in 2011, he misappropriated numerous files from the company (including design drawings and specifications for various components used in Benz Research's manufacturing process);[6]

- the Debtor then used those files to design, order, or buy the same or similar components for his new employer;[7]

---

[2] *Id.* The Court uses "Ennovy Spain" as shorthand for Mark'Ennovy Personalized Care S.L., the full name of the Debtor's new employer.

[3] *Id.* at 2 – 3.

[4] *Id.*

[5] *Id.* at 3 – 5.

[6] *Id.* at 7 – 8.

[7] *Id.* at 9 – 10.

- after learning that Benz Research had sued him, the Debtor destroyed a CD containing the files he misappropriated from Benz Research and then deleted Benz Research design drawings that were on his personal laptop;[8]

- during discovery, the Debtor fabricated and back-dated certain Ennovy Spain design drawings to hide the fact that he used stolen Benz Research design drawings to design and order components for Ennovy;[9]

- in an affidavit filed in support of a motion to dismiss, the Debtor falsely testified that he had not misappropriated any Benz Research design drawings and that he had not ordered parts from certain suppliers;[10]

- in interrogatory answers, the Debtor lied about his attempts to buy parts that had been custom made for Benz Research and, to hide those attempts, failed to disclose vendors he bought parts from;[11]

- and before Benz Research inspected Ennovy Spain's manufacturing facilities during discovery, the Debtor removed from Ennovy Spain's equipment components that were based on Benz Research's designs.[12]

Based on the Debtor's litigation misconduct, the state court struck his pleadings and entered a default judgment against him on Benz Research's claims,

---

[8] *Id.* at 8 – 9.

[9] *Id.* at 10 – 13.

[10] *Id.* at 11 – 13.

[11] *Id.* at 13 – 14.

[12] *Id.* at 14 – 15.

including Benz Research's misappropriation of trade secrets claim.[13] As an
additional sanction, the Court ordered the Debtor to pay the fees and costs Benz
Research incurred prosecuting its claims against him.[14]

In May 2017, the case went to trial against the Debtor on (among other things)
damages for misappropriation of trade secrets, as well as for liability and damages on
a civil theft claim, which was added against the Debtor after his pleadings were
struck.[15] The case also went to trial on liability and damages for misappropriation of
trade secrets, civil theft, and tortious interference claims against Ennovy Spain and
other related entities, which were added as defendants after the case was filed.[16]

The jury returned a verdict in favor of Benz Research on its claims against the
Debtor.[17] The jury awarded Benz Research $65,000 for misappropriation of trade
secrets; and $30,800 for civil theft.[18] The jury also returned a verdict in favor of Benz
Research on its claims against Ennovy Spain, awarding Benz Research $1.4 million
for tortious interference and $4.8 million for misappropriation of trade secrets.[19]

---

[13] *Id.* at 25 – 27.

[14] *Id.* at 25.

[15] *May 17, 2017 Jury Verdict*, Adv. Doc. No. 12-3; *Order Awarding Fees & Costs Against Def.*, Adv. Doc. No. 12-5 at 2 – 3.

[16] *May 17, 2017 Jury Verdict*, Adv. Doc. No. 12-3; *Order Awarding Fees & Costs Against Def.*, Adv. Doc. No. 12-5 at 3.

[17] *May 17, 2017 Jury Verdict*, Adv. Doc. No. 12-3.

[18] *Id.* at 4 & 6 – 7; The jury also awarded Benz Research $12,000 on a contract claim. *Id.* at 1.

[19] *Id.* at 2 – 5.

After trial, the state court threw out the jury verdict against the Debtor (and Ennovy Spain) for civil theft because the court determined that the civil theft claim was preempted by Florida's Uniform Trade Secrets Act.[20] The state court, however, awarded Benz Research $7,000 in punitive damages and prevailing party fees on Benz Research's misappropriation of trade secrets claim.[21] The state court's punitive damages and prevailing party fee awards were predicated on Benz Research's allegations—which were established by default—that the Debtor acted willfully and maliciously.[22]

As it turns out, the fees make up more than 98% of Benz Research's final judgment against the Debtor. Benz Research recovered $96,675.91 in compensatory and punitive damages, and prejudgment interest, which pales in comparison to the attorney's fees, costs, and interest on fees and costs that Benz Research recovered, which total more than $6 million.[23]

Benz Research filed this proceeding seeking a determination that its $6,154,600.71 final judgment is nondischargeable under Bankruptcy Code § 523(a)(4) and § 523(a)(6).[24] Benz alleges that (1) the debt arising from the Debtor's

---

[20] *Pre-Judgment Order on Multiple Post-Verdict Mots.*, Adv. Doc. No. 12-4 at 2.

[21] *Id.* at 2, 3 & 8 – 9.

[22] *Id.* at 2 & 8 – 9.

[23] *Final J. for Damages*, Adv. Doc. No. 12-6.

[24] *Am. Compl.*, Adv. Doc. No. 12.

misappropriation of trade secrets constitutes larceny (§ 523(a)(4)); and (2) the misappropriation of trade secrets, as well as the litigation misconduct, constitute a willful and malicious injury to its property (§ 523(a)(6)).[25] Benz Research now asks the Court to determine that the entire judgment is nondischargeable as a matter of law.[26]

According to Benz Research, the Debtor's willful and malicious misappropriation of trade secrets and his litigation misconduct were litigated in state court; those facts—established by the state court's sanctions order; the jury verdict; the final judgment, and various other state court rulings—are sufficient to establish nondischargeability under § 523(a)(4) and § 523(a)(6) as a matter of law; and the Debtor is collaterally estopped from relitigating those facts. Thus, whether Benz is entitled to summary judgment turns on the extent to which collateral estoppel applies here.[27]

## II.    Conclusions of Law

In concept, the collateral estoppel doctrine is simple: "[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that

---

[25] *Id.*

[26] *Pl.'s Mot. for Summ. J.*, Adv. Doc. No. 28.

[27] There is no question the collateral estoppel doctrine applies in dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."); *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (11th Cir. 1993) ("Collateral estoppel principles apply to dischargeability proceedings."). The issue is the extent to which the doctrine applies on the facts of this case.

determination is conclusive in subsequent suits based on a different cause of action involving a party (or privy) to the prior litigation."[28] To determine whether collateral estoppel applies to a Florida state court judgment, this Court applies Florida law.[29]

Under Florida law, collateral estoppel applies when: (1) the issue to be decided by the Court is identical to the issue decided in the state court litigation, (2) the issue was actually litigated in the state court litigation, (3) the prior determination of the issue was a critical and necessary part of the state court judgment, and (4) the standard of proof in the state court litigation was at least as high as it is in this proceeding.[30]

### A. The Debtor is collaterally estopped from relitigating the state court's misappropriation of trade secrets and litigation misconduct findings.

Benz Research's §§ 523(a)(4) and (6) claims in this proceeding primarily—though not solely—turn on two issues: (1) Did the Debtor misappropriate Benz Research's trade secrets?; and (2) Did the Debtor engage in litigation misconduct during the state court litigation?[31] Those exact two issues were litigated in state court and resolved in Benz Research's favor.

---

[28] 18 James Wm. Moore, et al., Moore's Federal Practice – Civil § 132.01 (3d ed. 2021).

[29] *In re St. Laurent*, 991 F.2d at 675 – 76 ("If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect.").

[30] *In re St. Laurent*, 991 F.2d at 676; *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1322 (11th Cir. 1995)).

[31] *Am. Compl.*, Adv. Doc. No. 12.

Benz Research sued the Debtor in state court for (among other things) misappropriating the company's trade secrets. During that litigation, Benz Research asked the state court to sanction the Debtor for litigation misconduct. After a five-day evidentiary hearing, the state court found that the Debtor misappropriated Benz Research's assets, used those assets for the benefit of his new employer, destroyed and concealed evidence of his misappropriation and later use of Benz Research's assets, and committed numerous discovery violations.

Because Benz Research proved—by clear and convincing evidence—that the Debtor engaged in misconduct, the state court struck the Debtor's pleadings and defaulted him, which established the well-pled allegations of Benz Research's complaint, including the allegation that the Debtor misappropriated the Debtor's trade secrets. The jury then awarded Benz Research damages for the Debtor's misappropriation of the company's trade secrets, leading to a judgment against the Debtor.

The state court's findings were necessary to that final judgment. Without the litigation misconduct, the state court could not have defaulted the Debtor, which established the misappropriation of trade secrets. And without the finding that the Debtor misappropriated trade secrets, the state court could not have entered a damages judgment against the Debtor. So the findings were critical and necessary to the compensatory damages award. The findings that the Debtor misappropriated trade secrets and engaged in litigation misconduct were also necessary to the punitive damages and fee award, which were incorporated into the judgment.

The Court therefore concludes that the Debtor is collaterally estopped from relitigating the findings that he misappropriated trade secrets and engaged in litigation misconduct. But where does that leave us? Benz Research argues that the state court's findings—established by the state court's sanctions order; the jury verdict; and the final judgment—are sufficient to establish its §§ 523(a)(4) and (a)(6) claims as a matter of law. Not so.

### B.    Benz is not entitled to judgment as a matter of law on its § 523(a)(4) claim because it fails to establish that the Debtor acted with the requisite intent as a matter of law.

Bankruptcy Code § 523(a)(4) excepts from the discharge debts for (among other things) larceny. Larceny, under § 523(a)(4), requires intent. To determine the requisite intent, bankruptcy courts look to common law.[32] Under common law, larceny requires proof of a "felonious taking of another's personal property with intent to convert it or deprive the owner of the same."[33] Although the state court found that the Debtor misappropriated Benz Research's trade secrets, that finding, alone, is not enough to prove the required felonious intent.

---

[32] *Aamodt v. Narcisi (In re Narcisi)*, 539 B.R. 385, 394 (Bankr. M.D. Fla. 2015) ("Larceny is interpreted in the common law for purposes of § 523(a)(4)."); *DirectTV, Inc. v. Deerey (In re Deerey)*, 371 B.R. 525, 534 (Bankr. M.D. Fla. 2007) ("When making a determination of whether to except a debt from discharge as one resulting from a debtor's 'larceny,' a bankruptcy court looks to the federal common law definition of larceny, rather than state law.") (citations omitted).

[33] *In re Narcisi*, 539 B.R. at 394 ("Under the common law, larceny is defined as 'a felonious taking of another's personal property with intent to convert it or deprive the owner of the same.'") (quoting *Weinreich v. Langworthy (In re Langworthy)*, 121 B.R. 903, 907 – 08 (Bankr. M.D. Fla. 1990); *In re Deerey*, 371 B.R. at 534 ("[L]arceny is defined as the 'felonious taking of another's personal property with intent to convert it or deprive the owner of the same.'") (quoting *In re Langworthy*).

Under Florida's Uniform Trade Secrets Act, "misappropriation" means "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "[d]isclosure or use of a trade secret of another without express or implied consent."[34] Thus, the Debtor could have misappropriated Benz Research's trade secrets—even willfully and maliciously—without intending to convert the trade secrets or deprive Benz Research of them.

So, to establish the requisite intent, Benz Research looks to the jury verdict on its civil theft claim. Recall that, after the Debtor was defaulted, Benz Research added a claim against the Debtor for civil theft. That claim went to the jury on both liability and damages, and in ruling in Benz Research's favor, the jury specifically found that the Debtor "obtained or used the property of Benz Research with the intent to appropriate, either temporarily or permanently, the property for his own or for Ennovy Spain's own use."[35] Based on that finding, Benz Research argues the "jury determined that [the Debtor] possessed 'felonious intent.'"[36]

Even if that's so, the jury's finding of "felonious intent" is not entitled to preclusive effect because it was not critical and necessary to the judgment. If critical and necessary at all, that finding was critical and necessary only to the civil theft

---

[34] § 688.002(2), Fla. Stat.

[35] *May 17, 2017 Jury Verdict*, Adv. Doc. No. 12-3 at 6.

[36] *Pl.'s Mot. for Summ. J.*, Adv. Doc. No. 28 at 14.

claim. Because that claim was thrown out after trial, the jury verdict for civil theft could not possibly have been critical and necessary to the judgment and therefore cannot be used to establish the intent required under § 523(a)(4).

On the record before the Court, there is a disputed issue of fact whether the Debtor misappropriated Benz Research's trade secrets with intent to convert them or deprive Benz Research of them. For that reason, Benz Research is not entitled to judgment as a matter of law on its § 523(a)(4) claim.

**C.     Benz Research is not entitled to judgment as a matter of law on its § 523(a)(6) claim because it fails to establish that the Debtor acted willfully as a matter of law.**

Bankruptcy Code § 523(a)(6) excepts from the discharge debts for willful and malicious injury to property of another. More than twenty years ago, in *Kawaauhau v. Geiger*, the Supreme Court discussed what constitutes a *willful* injury.[37] In particular, the *Geiger* Court considered whether § 523(a)(6) covers intentional acts that cause injury or acts done with the intent to cause injury.[38] After noting that the word *willful* modifies *injury*, the *Geiger* Court concluded that § 523(a)(6) requires a deliberate or intentional injury:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt

---

[37] 523 U.S. 57, 61 (1998).

[38] *Id.* ("We confront this pivotal question concerning the scope of the 'willful and malicious injury' exception: Does § 523(a)(6)'s compass cover acts, done intentionally, that cause injury (as the Kawaauhaus urge), or only acts done with the actual intent to cause injury (as the Eighth Circuit ruled)?").

debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself."[39]

To establish an intentional injury here, Benz Research relies on the state court judgment. The state court judgment, however, is not sufficient by itself to establish a willful—i.e., deliberate or intentional injury—as a matter of law.

To be sure, the state court default established the well-pled allegations of Benz Research's complaint, which included an allegation that the Debtor's misappropriation of Benz Research's trade secrets was "willful and malicious." The state court also awarded Benz Research punitive damages, which were predicated on a finding of "willful and malicious" conduct. And § 523(a)(6) excepts from the discharge a "willful and malicious injury." So why isn't the state court judgment for "willful and malicious injury," alone, sufficient to fall within § 523(a)(6)'s exception for "willful and malicious injury"?

As the Fourth Circuit Court of Appeals explained two years ago in *In re Muhs*, the Court "cannot conclude that just because the words are the same, the meaning is

---

[39] *Id.* at 61 – 62 (citation omitted).

13

also the same."[40] In *In re Muhs*, the Fourth Circuit faced the same issue this Court faces.

There, TKC Aerospace sued Charles Muhs in Alaska for (among other things) violating Alaska's Uniform Trade Secrets Act.[41] In its complaint, TKC Aerospace alleged that Muhs stole a business opportunity using TKC Aerospace's proprietary information and gave the opportunity to a competitor (Phoenix Heliparts). One month later, TKC Aerospace sued Phoenix Heliparts in Arizona for (among other things) violating Arizona's Uniform Trade Secrets Act.[42] The Arizona case went to trial first, and after a 40-day bench trial, the trial court entered judgment in TKC Aerospace's favor on its trade secrets claim, finding that Phoenix Heliparts "willfully and maliciously misappropriated [TKC Aerospace's] trade secrets."[43]

Based on the Arizona state court judgment, the Alaska state court, applying collateral estoppel, entered final judgment against Muhs.[44] The Alaska judgment included $13.5 million in exemplary damages under Alaska's Uniform Trade Secrets Act, which authorizes exemplary damages only if a willful and malicious

---

[40] *TKC Aerospace, Inc. v. Muhs*, 923 F.3d 377, 387 – 88 (4th Cir. 2019).

[41] *Id.* at 380.

[42] *Id.*

[43] *Id.* at 381.

[44] *Id.* at 382.

misappropriation exists.[45] Neither the Arizona judgment nor the Alaska judgment, however, made any specific finding that Muhs intended to injure TKC Aerospace.[46]

When Muhs filed for bankruptcy, TKC Aerospace sued to have the Alaska judgment determined to be nondischargeable under § 523(a)(4) and (a)(6). Relying on the Arizona and Alaska judgments, TKC Aerospace argued it was entitled to judgment on the pleadings because Muhs was collaterally estopped from relitigating the state court judgments.[47] In particular, TKC Aerospace argued that the state court judgments established the § 523(a)(6) claim because they included awards of exemplary damages, which could only be awarded if there was a "willful and malicious misappropriation."[48]

The bankruptcy court declined to apply collateral estoppel, but the district court reversed on appeal.[49] Although the district court held that Muhs was collaterally estopped from relitigating the facts in the Alaska case, it remanded the case to the bankruptcy court to determine whether the Alaska court's findings were sufficient to render the state court judgment nondischargeable under § 523(a)(6).[50] On remand, the bankruptcy court ruled that the state court judgment was

---

[45] *Id.*

[46] *Id.*

[47] *Id.* at 383.

[48] *Id.*

[49] *Id.* at 383 – 84.

[50] *Id.* at 384.

nondischargeable under § 523(a)(6) as a matter of law because it included an award of punitive damages, which are only available for willful and malicious conduct.[51]

The Fourth Circuit reversed and held that Muhs was not collaterally estopped from relitigating whether his misappropriation of trade secrets was "willful and malicious" under § 523(a)(6).[52] In doing so, the Fourth Circuit began by noting that TKC Aerospace failed to demonstrate that the meaning of "willful and malicious" under Alaska's Uniform Trade Secret Act is identical to "willful and malicious" under § 523(a)(6).[53] Then, after noting that, under *Geiger*, § 523(a)(6) does not encompass mere negligent or reckless conduct but instead requires an intent to injure, the Fourth Circuit observed that "many states adopting the [Uniform Trade Secrets Act] have developed definitions of willful and malicious that fall below the *Geiger* standard."[54]

What's more, even though the state court awarded TKC Aerospace exemplary damages, which could only be awarded if Muhs had engaged in willful and malicious conduct, the state court never found that Muhs intended to injure TKC

---

[51] *Id.*

[52] *Id.* at 385.

[53] *Id.* at 387.

[54] *Id.* at 387 – 88.

Aerospace, which was necessary for TKC Aerospace to prevail on its § 523(a)(6) claim.[55] So too here.

Although the state court here necessarily found that the Debtor's misappropriation of trade secrets was willful and malicious, Benz Research has failed to prove that "willful and malicious" under Florida's Uniform Trade Secrets Act is the same as "willful and malicious under § 523(a)(6)." And like in *In re Muhs*, the state court never found that the Debtor intended to injure Benz Research. The state court judgment therefore is not sufficient to establish the requisite intent under § 523(a)(6) as a matter of law.[56]

## III.    Conclusion

"A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction…cannot be disputed in a subsequent suit between the same parties or their privies ….'"[57] Because a state court has already considered and decided whether the Debtor misappropriated Benz Research's trade secrets and engaged in litigation misconduct, the Debtor cannot relitigate those facts.

---

[55] *Id.* at 382 & 384 – 85.

[56] Benz Research argues that the civil theft finding is sufficient to satisfy § 523(a)(6)'s willful and malicious requirement. Even if that were true, the civil theft finding is not, as explained above, entitled to preclusive effect because it was not critical and necessary to the state court judgment.

[57] *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *S. Pacific R. Co. v. United States*, 168 U.S. 1 (1897)).

But those facts, standing alone, do not support entry of judgment in favor of Benz Research as a matter of law on its § 523(a)(4) and § 523(a)(6) claims because the state court never decided whether the Debtor (1) took Benz Research's trade secrets with the intent to convert them or deprive Benz Research of them; or (2) intended to injure Benz Research by misappropriating its trade secrets or engaging in litigation misconduct. The Court will therefore, by separate order, deny Benz Research's motion for summary judgment.[58]

Attorney Richard Cole is directed to serve a copy of this Memorandum Opinon on interested parties who do not receive service by CM/ECF and to file a proof of service within 3 days of its entry.

**Richard J. Cole, III, Esq.**
**Cole & Cole Law, P.A.**
*Counsel for the Debtor*

**James L. Essenson, Esq.**
**Law Firm of James L. Essenson**
  -and-
**Christopher D. Smith, Esq.**
**Christopher D. Smith, P.A.**
*Counsel for Benz Research and Development Corporation*

---

[58] The Debtor raised several arguments against summary judgment, including that collateral estoppel does not apply. *Def.'s Resp. to Pl.'s Mot. For Summ. J.*, Adv. Doc. No. 36. The other arguments include that the Debtor is entitled to a setoff for any amounts Ennovy Spain paid Benz Research under a confidential settlement agreement, *id.* at 4 – 8; the $12,000 in damages awarded to Benz Research for breach of contract cannot be nondischargeable, *id.* at 8 – 10; damages for litigation misconduct cannot give rise to a nondischargeable debt, *id.* at 13; and the Court should determine that the debt the Debtor owes Benz Research is nondischargeable on equitable grounds under Bankruptcy Code § 105. Although the Court is skeptical of each of these arguments, the Court declines to rule on them because, given the Court's ruling on summary judgment, it is unnecessary. The Debtor can raise those arguments at trial.